IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**GLORIA JEAN BURNS,**

        **Plaintiff,**                NO. 3:17-cv-001445

vs.                                      JUDGE ALETA A. TRAUGER
                                           Magistrate Judge Kemp
**NANCY A. BERRYHILL,**
**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

To: The Honorable Aleta A. Trauger, Judge

## REPORT AND RECOMMENDATION

      This is an action instituted under the provisions of 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits and for supplemental security income. On March 20, 2018, Plaintiff filed a motion for judgment on the record and a supporting memorandum (Docs. 18, 19). The Commissioner responded on April 17, 2018. (Doc. 20). For the following reasons, it will be recommended that the Plaintiff's motion be **GRANTED** to the extent that the case be remanded to the Commissioner for further proceedings.

### I.  Background

      Plaintiff filed her applications for benefits on December 20, 2010, asserting that she became disabled on December 31, 2008. Those applications were finally denied on July 17, 2014, when the Appeals Council affirmed an unfavorable decision from an Administrative Law Judge dated March 26, 2013.

      Plaintiff then filed an action in this Court seeking review of that decision. In a decision filed on March 10, 2016, this Court granted Plaintiff's motion for judgment on the administrative record and remanded the case to the Commissioner for further proceedings, including a new administrative hearing. *See* Case No. 3:14-1817.

      Following remand, Plaintiff was given a new hearing before an Administrative Law Judge on January 19, 2017. She was also awarded benefits beginning on January 21, 2015 by the State

agency based on a new application for supplemental security income, so that disability after that date was no longer an issue. In a decision dated February 17, 2017, the ALJ determined that Plaintiff did not meet the requirements for disability prior to January 21, 2015. Plaintiff sought review of that decision from the Appeals Council, but her appeal was denied on September 8, 2017. The case is now before this Court to determine which party is entitled to judgment on the administrative record (Doc. 16).

## II. The Findings and Conclusions of the ALJ

In her decision, the ALJ made the following findings of fact and conclusions of law (with some legal references omitted):

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2012.

2. From December 31, 2008, through January 20, 2015, the claimant did not engage in substantial gainful activity.

3. From December 31, 2008, through January 20, 2015, the claimant had the following severe impairments: depression; pancreatitis; alcohol abuse; Morton's neuroma; and chronic obstructive pulmonary disease (COPD).

4. From December 31, 2008, through January 20, 2015, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, from December 31, 2008, through January 20, 2015 the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), which included the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday. In addition, the claimant had to alternate between sitting and standing every hour for 10 minutes without leaving the workstation; she could occasionally climb ramps/stairs but never climb ladders/ropes/scaffolds; she had to avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, poor ventilation, etc.; she was able to understand, remember, and perform simple instructions and tasks; she was able to maintain concentration, persistence, and pace for 2 hours at a time over an 8-hour workday; she was able to occasionally interact with coworkers, supervisors, and the general public; and she was able to adapt to infrequent changes in the workplace.

6. From December 31, 2008, through January 20, 2015, the claimant was

-2-

Case 3:17-cv-01445   Document 21   Filed 12/10/18   Page 2 of 10 PageID #: 1154

unable to perform any past relevant work..

7. The claimant was born on January 29, 1960, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.

8. The claimant has a high school education and is able to communicate in English.

9. Transferability of work skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed from December 31, 2008, through January 20, 2015.

11. The claimant was not under a disability, as defined in the Social Security Act, from December 31, 2008, through January 20, 2015.

### III. Plaintiff's Claims

Plaintiff makes a single claim in her motion for judgment and memorandum:

The ALJ's analysis of Plaintiff's mental impairments and the medical opinions regarding her impairments are contrary to law and again not supported by substantial evidence for almost the very reasons the District Court found the previous ALJ decision lacked substantial support.

### IV. Standard of Review

This Court has set forth the applicable standard of review in this fashion:

This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means " 'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its

weight." *Brooks v. Comm'r of Soc. Sec.*, 531 Fed.Appx. 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. *See Hernandez v. Comm'r of Soc. Sec.,* 644 Fed.Appx. 468, 473 (6th Cir. 2016) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller*, 811 F.3d at 833 (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014)).

*Allen v. Berryhill*, 273 F. Supp. 3d 763, 770 (M.D. Tenn. 2017)

### V. Summary and ALJ's Evaluation of Relevant Evidence

#### A. The Prior Proceedings

The Court will briefly summarize the prior remand order, which itself contains a detailed summary of the medical evidence considered by the first ALJ as well as the testimony given at the first administrative hearing. This summary provides the context for the decision on remand and this Court's review of that decision.

Plaintiff testified at the first administrative hearing that she had completed the eleventh grade and later obtained a GED. She had back and foot pain which limited her ability to stand and she had a shoulder injury which affected her lifting ability. She was in constant pain from pancreatitis and abdominal distension, had problems focusing due to depression, often spent the day in bed, and suffered from panic attacks. Another lay witness testified that Plaintiff had been unable to work successfully and also had vision issues.

The medical records showed, in brief, that Plaintiff was treated for foot pain due to Morton's neuroma, was diagnosed with late stage syphilis, was treated for acute pancreatitis, suffered from diverticulitis, was treated for PTSD and depression, had problems sleeping, and reported both panic attacks and mood swings.

In the first administrative decision, the ALJ determined that, physically, Plaintiff had the ability to perform a limited range of light work. From a psychological standpoint, the ALJ found that Plaintiff could understand, remember, and carry out simple and lower-level detailed instructions but could not make independent decisions at an executive level. Also, she could

maintain persistence, concentration and pace to perform simple and low-level detailed tasks but not higher-level, multi-step detailed tasks. She could also interact appropriately with the general public, coworkers, and supervisors and could adapt to infrequent change.

Plaintiff challenged that determination for, among other reasons, the fact that there was an unexplained discrepancy surrounding the ALJ's apparent adoption of some of the findings of the consultative psychological examiner, Dr. Vaught. Dr. Vaught had concluded that Plaintiff could understand simple instructions but due to memory and mood issues she was moderately limited in her ability to recall and perform such instructions. While adopting this finding, the ALJ also appeared to endorse a somewhat contradictory finding by another reviewer, Dr. Dubois, who said that Plaintiff had no significant limitations in her ability to deal with simple instructions. The Court considered this discrepancy to be a material one because the vocational expert testified that if Plaintiff would have difficulty carrying out instructions consistently in a structured setting, there would be no jobs available to her. The case was therefor remanded for "clarification of plaintiff's mental RFC and its impact on her ability to perform other work in the economy ....." (Tr. 667).

### B. Testimony at the Hearing Held on Remand

Plaintiff first testified that she stopped working due to pain in her feet. Prolonged standing made her feet swell to the point where she had trouble taking off her shoes. Even with medication she could not stand for more than an hour or two. She also could not lift more than ten pounds. Her other major issue was depression. She took medications which made her sleepy, and she could not concentrate for more than fifteen minutes at a time. She also had difficulty staying on task. Plaintiff also testified to daily blackouts and to staying in bed every other day due to lack of motivation. In addition, she thought people were plotting against her and she avoided being around others. (Tr. 614-21)

A vocational expert, Dr. Gary Sturgill, also testified at the second administrative hearing. He noted that Plaintiff had been a fast food worker, which is a light, unskilled occupation. She also worked for six months as a nurse attendant, which is a medium, semi-skilled job. She had not acquired any transferable work skills.

Dr. Sturgill was then asked about a hypothetical person of Plaintiff's age, education, and experience who could do a limited range of light work. Her physical restrictions included needing to alternate between sitting and standing every ten minutes and working in a relatively clean environment. The person also could concentrate for two-hour intervals, could interact occasionally with others, and could adapt to infrequent changes in the workplace. Dr. Sturgill said that such a person could not do Plaintiff's past work but could be employed as a mail clerk, hand packager, or personal care worker. He gave numbers for those jobs as they exist in the national economy. However, if the person were limited to maintaining concentration, persistence, or pace for only one hour at a time, no jobs would be available. The same would be true if the person were off task for 15% of the time. (Tr. 621-29).

### C. Medical Evidence

Plaintiff's memorandum focuses exclusively on psychological limitations. The Court will therefore summarize the evidence relating to Plaintiff's psychological condition, with particular emphasis on the records relied upon by Plaintiff's memorandum.

The Court begins, as does Plaintiff, with a 2011 consultative examination performed by Dr. Blazina. Plaintiff reported to Dr. Blazina that she stopped working due to pancreatitis and foot issues. She had a dysphoric mood and affect and said she had been depressed all of her life. She had also been abused as a child. Her memory and attention and concentration skills were within normal range. She could shop and do household chores and socialized with friends and family. Dr. Blazina diagnosed a dysthymic disorder and rated Plaintiff's GAF at 70, finding only some mild impairments in work-related activities. (Tr. 266-69). The results of that examination were followed by a determination by a state agency reviewer, Dr. Sachs, that Plaintiff did not have a severe mental impairment.

Only a few months later, Plaintiff underwent a second psychological evaluation, this time by Dr. Vaught. Although Plaintiff denied any history of substance abuse when seen by Dr. Blazina, she told Dr. Vaught that she had been addicted to alcohol for 32 years and that she had a history of blackouts. She also related a family history of depression and bipolar disorder, and said she suffered from PTSD due to a history of sexual abuse. She had also been hospitalized in June of 2011 and was currently seeking mental health treatment. Plaintiff said she did almost no household chores. She told Dr. Vaught that she had occasional episodes of disassociation and that she was paranoid. Based on testing, Dr. Vaught concluded that Plaintiff's attention "within a structured setting" appeared adequate but her concentration was mildly impaired. She also exhibited some problems with short-term memory. Dr. Vaught diagnosed PTSD and dissociative identity disorder, with rule out diagnoses of major depressive disorder and substance abuse persistent dementia. She rated Plaintiff's GAF at 46, determined that Plaintiff was moderately impaired even in recalling and performing simple instructions, and said that Plaintiff had difficulty carrying out instructions even in a structured setting. She also had restrictions in her ability to interact with others and in dealing with changes in the work setting. (Tr. 217-20). Reviewing this report and other records, a second state agency reviewer, Dr. Dubois, concluded that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, to complete a workday or work week without interruption from psychologically-based symptoms, to interact appropriately with others, and to adapt to changes in a work setting. She also stated that Plaintiff could deal adequately with simple and lower-level detailed tasks, being able to understand, remember, and perform those tasks with adequate concentration, persistence, and pace. (Tr. 380-82).

The other evidence which predates the first administrative decision is adequately summarized in Plaintiff's memorandum as well as in the prior decision of this Court. The most important feature of that evidence, consisting largely of counseling notes, is that Plaintiff frequently presented with symptoms such as a flat or anxious affect and a dysphoric mood, and that her GAF was rated at 45. *See* Doc. 19, at 6-8.

-6-

A third consultative mental status examination was done on February 2, 2014 by Dr. Paul P. Lima, a psychologist, and Philip H. Barkely, M.A. It was noted that Plaintiff brought only a few written records with her and that the examination results were based mostly on her own statements, which were considered "more or less reliable." At that time, Plaintiff was living with her sister and was doing housework for the landlord. She appeared hostile and paranoid during the interview. She claimed to have visual hallucinations and said her mood was okay if she did not have to be around other people. Plaintiff said she had difficulty understanding what she read and did not retain information. She denied socializing outside the home and said she often spent the day in bed. The primary diagnosis was major depression, recurrent, severe with psychotic features. The report concluded that Plaintiff's ability to do most work-related activities was moderately to severely limited. (Tr. 1050-54). Based on that evaluation, Dr. Kupstas, a state agency psychologist, concluded that Plaintiff was still able to remember and carry out low-level detailed instructions and to maintain concentration, persistence, and pace to do so over a normal workday with appropriate breaks. He also thought that she could relate appropriately to others in the workplace and, on an intermittent basis, with the public. She could also adapt to routine changes in the workplace. (Tr. 744-46).

Finally, Plaintiff accurately summarized in her memorandum (pp. 10-12) additional treatment notes from 2013 and 2014. Those notes show that Plaintiff was diagnosed with major depressive disorder, severe, with psychotic features, and that her GAF score was 40. The notes also show that Plaintiff often could not afford her medications and suffered from anxiety and anger issues.

### D. The Second ALJ's Decision

Because Plaintiff's statement of error is directed toward the ALJ's determination that she had the residual mental functional capacity to work, the Court's summary of the ALJ's decision will share a similar focus.

The ALJ first considered whether Plaintiff's mental impairments met the criteria for disability set forth in the Listing of Impairments. She found that they did not, concluding that had only moderate limitations in understanding, remembering, and applying information, as well as moderate limitations in social interaction. Her restriction in the area of concentration, persistence, and pace was also moderate, and she had moderate limitations in the area of adaptation. As a result, she did not satisfy the "B" criteria applicable to mental impairments, which require either one extreme or two marked limitations in those categories.

After determining that Plaintiff had the physical capacity to work, the ALJ began her review of the evidence concerning psychological impairments. She noted that Plaintiff began reporting symptoms as early as 2010, and by 2011 she was stable on medication. However, she then began to exhibit a series of behaviors which led to her hospitalization for treatment. By the date of the first administrative hearing, however, Plaintiff said that her blackouts had been due to alcohol withdrawal and that they had ceased. She also reported an improvement in symptoms to providers in 2011. The same was true in 2012, when, according to the ALJ, Plaintiff was able to

increase her activity level and her independence. She babysat throughout the summer of 2012, and there was an 8-month gap in treatment to begin 2013. When seen in September, 2013, Plaintiff said she was unstable, but she also said she forgot frequently to take her medication. There were other instances of medication noncompliance in 2014.

The ALJ noted, correctly, that there was no treating source opinion concerning Plaintiff's mental restrictions. The ALJ reviewed the opinions of Dr. Blazina and the initial state agency reviewers and gave limited weight to those opinions because the evidence supported moderate, rather than mild, limitations in various areas of work-related activities. However, the ALJ concluded that Plaintiff could adequately understand, remember, and perform simple instructions and tasks. She noted that two consultative examiners (not named in the decision itself, but who were Drs. Vaught (Ex. 1F) and Lima (Ex. 25F)) did not agree with this determination, but the ALJ gave no weight to these opinions on that specific issue because both examiners said that Plaintiff could manage her own finances, because the more severe symptoms which Plaintiff developed prior to the 2011 consultative examination did not last for 12 months - particularly not into 2012, a year in which Plaintiff was able to travel, keep appointments, and babysit her grandchildren - and, apparently, because she was somewhat inconsistent in taking her medication (although the ALJ did note that much of this was due to lack of funds). The ALJ then gave great weight to the opinion of the reconsideration level state agency assessment - that of Dr. Dubois - even though that assessment predated Dr. Lima's examination by some two-and-one-half years. Finally, the ALJ gave no weight to the consistently low GAF scores, reasoning that they were not consistent with the evidence and that they were snapshots of Plaintiff's capabilities based largely on her own statements, which the ALJ found to be unsubstantiated in many instances. (Tr. 592-99).

## VI. Discussion

As noted, Plaintiff raises only a single issue in her statement of errors, but it has three parts to it. She argues (1) that the second ALJ made the same error as the first by assigning exactly the same weight to all of the opinion evidence; (2) erred by failing to follow the law concerning the new examining source evidence (*i.e.* the opinion of Dr. Lima); and (3) did not perform the proper analysis when a claimant has both a mental disorder and a substance abuse disorder. The Court will discuss each of these arguments in turn.

Plaintiff collapses her first two issues into this argument. She says that the ALJ did not consider the opinions of Dr. Vaught and Dr. Lima together, and therefore violated the regulatory command that the record be considered as a whole. Plaintiff points out the consistency in those opinions regarding her ability to perform simple tasks, to interact appropriately with others, and to adapt to changes in the workplace, and notes that the fact that these opinions were rendered three years apart shows that her condition remained consistently severe throughout that time frame. She couples this with the fact that both of these sources (unlike the state agency reviewers) actually examined Plaintiff and that there is a regulatory preference for such opinions. Finally, she concludes that the ALJ was not permitted to discount the opinions based on the

examiners' own findings because that constitutes substituting her own opinion for that of a medical expert. She also notes that the ALJ chose selectively to emphasize activities of daily living that Plaintiff cannot perform on a sustained basis, at least according to the treatment notes, and as reflected in Plaintiff's GAF scores, which were also consistent over time. In response, the Commissioner asserts that the ALJ made slightly different findings as to the weight given to the prior medical opinions, thus doing what the Court asked her to do, and that the ALJ's treatment of the medical evidence is supported by the record and not in violation of any regulatory or decisional law.

The Court finds merit in Plaintiff's argument on the second of these issues. As to the first (*i.e.* whether the ALJ violated the Court's remand order), the remand order simply asked the ALJ to clarify her findings about the potential inconsistencies between the opinions of Drs. Vaught and Dubois, both of which the first ALJ seemed to credit.. The second administrative decision addressed that inconsistency adequately. The ALJ explained that, of the two opinions, she gave greater weight to Dr. Dubois' conclusions that those reached by Dr. Vaught, and she explained why. Upon reviewing the administrative decision, the Court is no longer left with the impression that the ALJ might have credited an opinion which viewed Plaintiff as having difficulty understanding, remembering, and carrying out simple instructions - limitations inconsistent with doing the kind of work for which Plaintiff was qualified. That added clarity cured the defect in the initial administrative decision and complied with the remand order.

On the second issue, however, the ALJ's decision is flawed because it fails the substantial evidence test. The ALJ's reasoning is sound up to a point. The record does support the conclusion that in the middle of 2011, and particularly in the months leading up to Dr. Vaught's assessment, Plaintiff had discontinued alcohol use and was suffering from symptoms due to having done so. Her improvement in the latter part of that year, and through 2012, when she was able to carry out work-like activities such as babysitting and doing cleaning, support the ALJ's choice to credit Dr. Dubois' opinion over that of Dr. Vaught as it relates to the performance of simple tasks. Any reasonable reading of the record, however, shows that by some time in 2013 - perhaps by the time Plaintiff resumed treatment in September - Plaintiff's mental condition had worsened. From that time forward, her treating sources consistently rated her GAF at 40, which is indicative of severe symptoms, and each rating was not just a snapshot, as the ALJ asserted, but was accompanied by notes of longitudinal treatment which also, in their narrative, listed severe symptoms, and also carried a diagnosis of a mental impairment with psychotic features. Dr. Dubois, whose opinion was rendered in October of 2011, and whose opinion appears to have been accepted by the ALJ as the most persuasive, had no opportunity to review these notes or assessment. The consultative examiner who did have that opportunity, and who himself examined Plaintiff in February of 2014, was Dr. Lima, and he reached the conclusion that Plaintiff had a moderate to severe limitation in her ability to deal with simple instructions and tasks, to maintain adequate concentration and attention, and to adapt to changes in the work environment.

The ALJ did not accept that part of Dr. Lima's opinion. However, most of the reasons the ALJ gave for rejecting that conclusion relate to Plaintiff's activities well prior to February,

-9-

2014. The administrative decision cites to the findings made at the consultative examination itself as additional evidence that Plaintiff could remember and carry out simple instructions, but Dr. Lima did not view those findings, when combined with other information, such as Plaintiff's apparent paranoia, visual hallucinations, and severe depression, as indicative of the ability to work on a sustained basis, even doing only simple tasks. To the extent that the ALJ reached a different conclusion using the exact same body of evidence, the ALJ's decision is not supported by the record. While it is true that an ALJ can discount the findings of a consultative examiner - whose opinions, as Plaintiff correctly asserts, are typically accorded more deference that those of a non-examining source - there must be other objective evidence in the record casting doubt on the consultative opinion, or obvious inconsistencies in that opinion. *See, e.g., Staymate v. Comm'r of Social Security,* 681 Fed.Appx. 462 (6th Cir. March 7, 2017)(upholding ALJ's decision not to credit opinion of consultative examiner because the remainder of the record did not support it and the examiner himself ascribed a GAF of 60 to the claimant, which indicates only mild symptoms); *see also Jones v. Comm'r of Social Security*, 336 F.3d 469 (6th Cir. 2003)(holding that an ALJ may discount the findings of a reviewing source as to the claimant's ability to maintain a schedule based on evidence that she was able to take her daughter to school each day and to pick her up punctually). Here, the ALJ cites to no such objective evidence from late 2013 onward which supports her decision to give no weight either to Dr. Lima's opinion or to the treatment notes and corresponding GAF scores. Consequently, although the ALJ's decision as to disability may be supported through approximately September, 2013, it does not rely on substantial evidence after that date. The Court therefore will recommend that the case be remanded for a further evaluation of the evidence and further consideration of Dr. Lima's opinion for the time period from September, 2013 to January 20, 2015.

## VII. Recommendation

For all the reasons set forth above, the Court **RECOMMENDS** that the Motion for Judgment (Doc. 18) be **GRANTED** to the extent that the case be remanded for further proceedings consistent with this decision, pursuant to 42 U.S.C. §405(g), sentence four.

## VIII. Procedure on Objection

If any party seeks review of this Report and Recommendation by the assigned District Judge, that party may, within 14 days, file and serve on all parties written objections to the Report and Recommendation which specifically identify the part of the Report to which objection is made as well as the reasons supporting that objection. *See* 28 U.S.C. 636(b)(1); Fed.R.Civ.P. 72(b). Any response must be filed withing 14 days thereafter. Failure to object to a Report and Recommendation waives any right to obtain *de novo* review by the District Judge and waives any issues that might otherwise be raised on appeal. *See, e.g., Robert v. Tesson,* 507 F.3d 981,994 (6th Cir. 2007)

/s/ Terence P. Kemp
United States Magistrate Judge